1

2

3

4

5

6

7

8
                      UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF WASHINGTON

9
                              AT TACOMA

10

11
HDI-GERLING INDUSTRIE                               CASE NO. 3:10-cv-05105-RJB
VERSICHERUNG AG,

12                                                             ORDER ON DEFENDANT'S
                Plaintiff,               MOTION FOR SUMMARY
                             JUDGMENT

13
       v.

14
PACIFIC DISTRIBUTION SERVICES
LLC,

15

16
                Defendant.

17
       This matter comes before the court on Defendant Pacific Distribution Services LLC's

18
Motion for Summary Judgment (Dkt. 18).  The court has considered the pleadings filed in

19
support of and in opposition to the motions and file herein.

20
                         <u>Factual and Procedural History</u>

21
       On February 12, 2010, Plaintiff filed a complaint for damages allegedly resulting from

22
Defendant's handling of the Plaintiff's cargo.  Dkt. 1.  The complaint asserts that Plaintiff's

23

24

1   insureds, Rothfos and InterAmerican Coffee Company ("IAC"),[1] stored green coffee beans in

2   Defendant's warehouse and that the beans were damaged during storage due to Defendant's

3   negligence.  *Id.*  Plaintiff alleges that Defendant was negligent and careless in its handling of

4   Plaintiff's cargo, breached its duties and obligations as warehouseman and a bailee of the cargo,

5   and was otherwise at fault.  *Id.*  On June 23, 2010, Defendant filed its answer, and requested that

6   the complaint be dismissed with prejudice.  Dkt. 7.

7           In January 2009, the insureds had 9,316 bags of coffee beans stored with Pacific

8   Distribution Services LLC ("PDS") in a warehouse located at 3601 142nd Avenue East, Sumner,

9   Washington.  Dkt. 18; Dkt. 22.  The record is silent as to the terms of any contract between the

10  insureds and PDS.  The parties agree that the insureds did not provide the Defendant with

11  instructions on how to store the coffee beans.  *Id.*  The parties also agree that the warehouse was

12  not climate controlled aside from freeze protection that was provided as needed from heaters

13  mounted closely to the roof of the warehouse.  *See* Dkt. 18.  The stacks of beans were stored in

14  pallets; pallets generally contained 20 bags stowed with five bags per tier and four tiers high.

15  *See Id.*

16          Coffee beans were shipped from various locations, such as Guatemala and Columbia, to

17  Pacific Distribution who accepted the shipments for the insureds.  Dkt. 21.  Plaintiff contends

18  that the coffee beans and their bags were in good condition when they arrived and were accepted

19  by Pacific Distribution.  Dkt. 1.  Defendant contends that there is no evidence to suggest that the

20  coffee beans or their bags were in good condition on arrival.  Dkt. 18.  There is no evidence that

21  Defendant took exception to the condition of the coffee upon receipt.  Dkt. 21.

22

23  _____

24  [1] This is a subrogation lawsuit filed by insurer HDI-Gerling Industrie Versicherung AG ("HDI-Gerling").

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 2

1    The insureds first learned of the damaged condition of the coffee beans when a customer

2    in New Orleans notified them that it received a discolored shipment.  Dkt. 21.  In response,

3    representatives of PDS, Rothfos, IAC, and their respective insurers conducted an inspection of

4    Defendant's warehouse.  Dkt. 21.  During the inspection, the parties present noted that although

5    an earlier inventory reflected that 9,916 bags were stored in the warehouse, there were only

6    9,316 bags present.  Dkt. 21.  At the conclusion of the inspection, the parties present agreed

7    upon, and signed, the following statement:

8        "On November 4 and 5, 2009, we examined randomly selected
         samples of aforementioned inventories and noted the following.
9
         All exposed bag surfaces showed discoloration including bottom
10       layer bags.  On bottom layers the pallet pattern was evident:  where
         bags had been in contact with the pallet wood, the material was not
11       discolored; where bags were exposed to air between pallet slats,
         discoloration was found.
12
         Corresponding patterns of discoloration were observed on the
13       coffee beans as well.  All coffee adjacent to exposed areas of bags
         were found to show discoloration to a depth of 1" to 2".  Other
14       coffee in the bags was affected to a lesser degree.

15       We examined samples with received dates ranging from September
         2004 to October 2009.  The degree of discoloration appeared to
16       correlate to the length of storage, i.e. the most recently received
         beans showed no to slight discoloration.  Coffee beans in storage
17       for approx. 6 weeks or longer showed clear signs of discoloration.
         Discoloration conditions found became progressively more
18       pronounced the longer the storage period."  *See* Dkt. 21-2.

19   Plaintiffs contend that the damage to the beans was a result of the conditions in

20   Defendant's warehouse (*see* Dkt. 1) while Defendant contends that the damage is a result of

21   oxidation of fatty acids in the beans (involving exposure to oxygen) that is an effect of the beans

22   aging (*see* Dkt. 22).

23

24

1     Defendant's representative at the inspection, Edward F. Travers & Associates, Inc.,

2   Marine Surveyors and Cargo Consultants, agreed with the joint statement and advised Defendant

3   in a separate report to hire an industrial hygienist to inspect the air quality in the warehouse and

4   evaluate whether any other contaminants might be present. Dkt. 20-3. Defendant heeded this

5   advice and hired MDE, Inc. ("MDE"), a company with experience in forensic chemical analysis

6   and industrial hygiene to inspect the warehouse. In November 2009, MDE inspected the

7   warehouse and coffee beans in storage and sampled the warehouse air for contaminants

8   including "volatile organic compounds such as formaldehyde, and also for bacteria and fungi."

9   Dkt. 18 at 5. MDE reported that it did not find contaminants in the warehouse. Dkt. 20-4.

10     One of Plaintiff's representatives at the joint inspection was Haverie-Büro Berner,

11   Independent Cargo Surveyors, who Plaintiff hired to inspect the warehouse. Haverie-Büro

12   Berner conducted an independent analysis and issued a preliminary report in November 2009

13   (Dkt. 21-2) and updated reports in January 2010 (Dkt. 21-3) and April 2010 (Dkt. 21-4). The

14   April 2010 report states that the cause for the damage is still under investigation and that "[a]ll

15   results which are available up until now are not enough at this stage that chemists would be in a

16   position yet, to explain the phenomena." Dkt. 21-4.

17     As a result of the damage found, HDI-Gerling paid a claim submitted by IAC in the

18   amount of US$457,630.56 and a claim submitted by Rothfos in the amount of US$248,453.29.

19   Dkt. 21. By virtue of these payments, HDI-Gerling became subrogated to the rights of Rothfos

20   and IAC. *Id.*

21                          Motion for Summary Judgment

22     On February 3, 2011, Defendant filed Defendant Pacific Distribution Services LLC's

23   Motion for Summary Judgment (Dkt. 18), contending that it is entitled to judgment as a matter of

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 4

1    law because Plaintiff cannot show a genuine issue of material fact.  Defendant contends that

2    Plaintiff cannot show either that PDS breached its duty of care, or that any such breach caused its

3    damage.  Dkt. 18.  Defendant argues that Plaintiff's negligence claim is not sufficient to survive

4    summary judgment because (1) there is no evidence to suggest that the raw beans were fresh

5    when they arrived at the warehouse, and (2) there is no evidence to suggest that any act or

6    omission of PDS caused the damage to the coffee.  *Id.*

7          On February 22, 2011, Plaintiff filed Plaintiff's Opposition to Defendant's Motion for

8    Summary Judgment (Dkt. 21).  Plaintiff argues that there are genuine issues of material fact

9    concerning Defendant's breach of the duty of care imposed on it as a warehouseman.  Dkt. 21.

10   Plaintiff argues, and its expert opines, that the damage that occurred to the coffee beans "were

11   not of a nature that would ordinarily be encountered with coffee" and "were unrelated to aging or

12   any other inherent property of the coffee."  *Id.* at 4.  Plaintiff contends that the damage would not

13   have occurred, or would have been minimized, if PDS had not breached its duty to safeguard the

14   cargo by either (1) maintaining a better environment for storage, or (2) notifying the insureds of

15   visible damage that PDS should have observed.  *Id.*  Plaintiff further argues that even if aging

16   were the cause of the damage, that natural cause would not have alleviated PDS' duty to

17   safeguard the coffee.  *Id.* at 7.

18         On February 25, 2011, Defendant filed Pacific Distributions Services' Reply on Motion

19   for Summary Judgment (Dkt. 22).  Defendant argues that the Court should strike the opinions of

20   the Plaintiff's expert, Markus Helms, as discussed below.  *Id.*  Further, Defendant argues that

21   Plaintiff has not presented any evidence that negligence by PDS caused the damage to the coffee

22   beans.  *Id.*

23                          <u>Motion to Strike Material in Plaintiff's Response</u>

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 5

1    In anticipation of the Defendant's objection to the Plaintiff's expert witness' opinions, the

2    Plaintiff argues that no expert testimony is needed to prove its negligence claim.  Dkt. 22 at 6.

3    The Plaintiff contends that whether PDS' omissions amounted to a breach of its duty of care is a

4    determination that can be made on the basis of common knowledge and no expert testimony is

5    required.  *Id.*

6    Defendant argues that the Court should strike the opinions of the Plaintiff's expert,

7    Markus Helms.  Dkt. 22.  First, Defendant argues that Mr. Helms does not have adequate

8    qualifications, or proof of such qualifications, to qualify him as an expert able to make the

9    following assertions: (1) that the damage to the coffee was not the result of aging, (2) that the

10   discoloration was caused by conditions present in the warehouse, and (3) that PDS should have

11   discovered the damage to the coffee.  *Id.* at 2-5.  Second, Defendant argues that the Court should

12   strike the following statements made by Mr. Helms that are not supported by the facts: (1) that

13   the coffee was undamaged when received at the warehouse, and (2) that the removal of the

14   coffee from the warehouse would have had the effect of reducing the damage.  *Id.* at 5-6.

15                                               Standards

16   *1.  Standard for Motion to Strike Material in Plaintiff's Response*

17   If the witness is not testifying as an expert, the witness' testimony in the form of opinions

18   or inferences is limited to those opinions or inferences which are (a) rationally based on the

19   perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the

20   determination of a fact in issue, and (c) not based on scientific, technical, or other specialized

21   knowledge within the scope of Rule 702.  F.R. Evid. 701.  If scientific, technical, or other

22   specialized knowledge will assist the trier of fact to understand the evidence or to determine a

23   fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 6

education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.  F.R. Evid. 702.

### 2. Standard for Summary Judgment

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

When considering a motion for summary judgment, the court must view all evidence in a light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

1    The elements of negligence are (1) a legal duty requiring the actor to conform to a certain

2    standard of conduct, for the protection of others against unreasonable risk, (2) a failure to adhere

3    to this reasonableness standard, (3) a causal connection between the conduct and the injury, and

4    (4) actual loss or damage.  *Flying Diamond Corp. v. Pennaluna & Co., Inc.*, 586 F.2d 707, 713

5    (9th Cir. 1978).  In Washington, where perishable goods have sustained damage in storage,

6    negligence cannot be presumed from the mere fact of damage.  *Van Nostern v. Richey & Gilbert*

7    *Co. et al.*, 2 Wn.2d 663, 665 (1940).  In such cases the plaintiff must affirmatively prove the

8    warehouseman's negligent act or omission causing the damage.  *Id.*  The Washington Uniform

9    Commercial Code defines the warehouseman's duty as follows:

10         A warehouse worker is liable for damages for loss of or injury to
     the goods caused by his or her failure to exercise such care in
11   regard to them as a reasonably careful person would exercise under
     like circumstances but unless otherwise agreed he or she is not
12   liable for damages which could not have been avoided by exercise
     of such care.  RCW 62.A.7-204.
13
     The Washington State Supreme Court has found that it is a question for the trier of fact when
14
     there are questions regarding the condition of perishable goods upon delivery to a warehouse
15
     when the bailor of the goods was not present and the bailor claims that the bailee has not
16
     exercised due care in caring for those goods.  *See Smith v. Diamond & Ice Storage Co.*, 65 Wn.
17
     576, 579 (1911).
18
                                                Discussion
19
         1.   *Discussion of Motion to Strike Material in Plaintiff's Response*
20
           Plaintiff's expert, Marcus Helms of Haverie-Büro Berner, Independent Cargo Surveyors,
21
     testifies beyond his personal observations of the coffee beans and provides testimony based on
22
     scientific, technical, or other specialized knowledge.  As such, Mr. Helms provides expert
23
     opinion in his declaration.  At this stage, Mr. Helms appears qualified to provide expert opinion
24

1    because he has worked as a surveyor and Managing Director of Haverie-Büro Berner, a company

2    that provides independent cargo surveyors, not unlike the cargo consultants that Defendant

3    likewise hired to provide expert opinion in this case.  Mr. Helms lists his experience with

4    Haverie-Büro Berner in his declaration (Dkt. 21-1).

5        Moreover, although Mr. Helms appears to base his opinions on relatively few facts, these

6    facts are adequate to allow his declaration to stand.  Accordingly, the Defendant's Motion to

7    Strike Material in Plaintiff's Response (Dkt. 18) should be denied.

8        2.  *Discussion of Motion for Summary Judgment*

9            In this case there remain a few disputed facts that should be submitted to the trier of fact.

10   First, the parties dispute the condition of the coffee beans when they arrived at, and were

11   received by, PDS.  Second, the parties dispute whether the coffee beans discolored due to aging

12   or whether the coffee beans discolored due to exposure in the warehouse.  Third, the parties

13   dispute whether PDS had a duty to further protect the coffee or otherwise notify the insureds of

14   the damage.  Finally, the parties dispute whether the removal of the coffee from the warehouse

15   would have had the effect of reducing the damage.  These disputes are not properly decided at

16   the summary judgment stage.  Accordingly, Defendant Pacific Distribution Services LLC's

17   Motion for Summary Judgment (Dkt. 18) should be denied.

18

19

20

21

22

23

24

1    Therefore, it is hereby **ORDERED** that Defendant's Motion to Strike Material in

2  Plaintiff's Response (Dkt. 18) is **DENIED** and Defendant Pacific Distribution Services LLC's

3  Motion for Summary Judgment (Dkt. 18) is **DENIED**.

4    The Clerk is directed to send uncertified copies of this Order to all counsel of record and

5  to any party appearing pro se at said party's last known address.

6    Dated this 8th day of March, 2011.

7

8

9    ROBERT J. BRYAN
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 10